LITTRELL ET AL., RESPONDENTS, *v.* WILCOX, APPEL-
LANT.

[Argued June 29, 1891. Decided July 27, 1891.]

SPECIAL JUDGE— *Constitutional interpretation.* — The authority given by section 36, article viii. of the Constitution to a special judge to try a case, carries with it authority to do any act incidental or necessary to the exercise thereof.

JUDGE— *Disqualification — Formal acts — Special venire.* — The disqualification of a judge to act as such in any case where he has been attorney for either party, as provided in section 547 of the Code of Civil Procedure, does not extend to a formal act as ordering the issuance of an open venire for a jury to try such case where the regular panel has been discharged.

INSTRUCTIONS. — In an action for services in drilling a well where there was no evidence that it was agreed that water was to be reached, an instruction to the effect that it was not expressed in the contract between plaintiff and defendant whether water was to be reached, and the jury should take that into consideration in passing upon it with the other evidence in the case, is proper.

CONTRACTS—*Interpretation*—" *Well* " *defined.* — An agreement to drill a well cannot, in the absence of any special contract, be construed as an undertaking that water other than surface water shall be obtained.

*Appeal from Eighth Judicial District, Cascade County.*

Action to recover for services rendered. The cause was tried before JAS. P. LEWIS, special judge, sitting in place of BENTON, J. Plaintiffs had judgment below.

Statement of the case prepared by the judge delivering the opinion.

The complaint in this action is for work, labor, and services rendered by plaintiffs for defendants, at their request, in drilling a well for defendants to a depth of 230 feet. It is alleged that said services were worth the sum of $637.50, and that no part of the same has been paid except $100. The demand for judgment is for $500, $37.50, it appearing from the evidence, having been remitted.

Margaret Southerland was a defendant, but seems to have dropped out of the controversy. The defendant Wilcox filed a separate answer, in which he makes the defense that whatever labor was performed by plaintiffs was upon a special contract, whereby plaintiffs agreed to sink for defendants a well containing water other than surface water, and that such contract should be completed within a reasonable time. The answer further sets up that, prior to the completion of such special contract, and without reaching water, plaintiffs abandoned the contract without leave from defendants, or any lawful excuse therefor; that plaintiffs did not offer to complete said contract; and that, under the terms thereof, they were to receive no pay until completed.

A replication denied the new matter in the answer. The verdict and judgment were for the plaintiffs for $500. A motion for a new trial was denied. Defendants appeal from that order and from the judgment.

*Thos. E. Brady,* for Appellants.

*Leslie & Baum,* for Respondents.

DE WITT, J. — The main controversy in this case is that apparent upon the face of the pleadings, the plaintiffs contending

for a judgment for work, labor, and services upon a *quantum meruit* allegation and proof, and the defendants insisting that there was a special contract, which plaintiffs had failed to perform, and hence they could claim nothing.

But other questions are raised, and the best view of the case can be obtained by following appellant's specification of errors, and treating them in their order.

Hon. C. H. BENTON, judge of the district, had been counsel in the case before his elevation to the bench. The case was tried before J. P. LEWIS, Esq., special judge, under the provisions of the Constitution (art. 8, § 36).

1. The first error assigned is that the special judge set the case for trial, whereas he had no authority, under the Constitution, to do anything but try the case. Who set the case does not appear. If it did, we should not hesitate to say that authority to try a case carried with it the authority to do the necessary and incidental act of setting it for trial, as fully as to adjourn the trial for luncheon.

2. The second assignment of error takes a view of the law opposite to that held in the first. Defendant challenged the entire panel of jurors, on the ground that the *venire* for them was issued by Hon. C. H. BENTON, judge, who, as appears above, had been counsel in the case. The challenge was overruled.

It appears that the regular jurors had been discharged. The clerk was ordered to issue a special *venire* for twenty jurors. The writ reads: "To the sheriff, etc. You are hereby commanded to summon twenty good and lawful men of Cascade County, etc." No names are contained in the writ as persons for the sheriff to summon. The sheriff returns that he had summoned twenty men, giving their names in his return.

The record states that defendant Wilcox files his written challenge to the entire panel, because the same had been drawn under the direction of Hon. C. H. BENTON, the regular judge of the court, who was disqualified, as above set forth. When we consult defendant's written challenge referred to in the above terms, and which is in the record, we find the following language therein set forth as the ground of the challenge: "Challenges the entire panel of said jury on the ground that the same

was improperly drawn, the said jury being drawn under a special *venire* issued by Hon. C. H. BENTON, judge, who is disqualified from acting as judge therein, having been attorney for the plaintiff," etc. So far as the jury having been drawn under the direction of Judge BENTON is concerned, the facts are simply that he ordered an open *venire* to issue. He had nothing whatever to do with the selection of the persons summoned, it being left to the sheriff to select them from the body of the county. Section 15 of the Act of March 14, 1889 (p. 168, 16th Sess.) provides: "If during the progress of any trial of any cause in such court, where a jury has been drawn, as in this section provided, it shall become necessary for any cause to summon additional jurors, such additional jurors shall be drawn and summoned by an open *venire* in accordance with the provisions of section 255 of the first division of the Compiled Laws of Montana, and the acts amendatory thereto."

Section 255, as amended March 2, 1889 (16th Sess. p. 165), as to an open *venire*, provides: "If from any cause the names contained in said box . . . . shall be exhausted without obtaining a competent jury, the court may order a *venire* to issue, directing the sheriff to summon from the citizens of the body of the county, and not from by-standers, so many qualified persons as may be necessary to complete the jury in the pending trial."

As far as we can learn from the record in this case, it was under the provisions of these laws that the jury complained of was summoned. The judge had nothing to do with the selection of the jurors. He did nothing more than the formal act of ordering the *venire* to issue.

As to the disqualification of the judge, we find section 547 of the Code of Civil Procedure: "A judge shall not act as such in any of the following cases: . . . . When he has been attorney or counsel for either party in the action or proceeding."

This disqualification of a judge now generally obtains by statute. But it is held that such disqualification does not extend to formal and non-judicial acts. The court says in *Cock v. State*, 8 Tex. App. 666: "It is urged in a motion in arrest of judgment that the Hon. A. J. Booty, the regular judge of the District Court of Panela County, and who was

present and presiding, having been of counsel in the case, was disqualified from receiving the indictment or making any order in the case. A district judge is prohibited by the Constitution from sitting in any case (among other circumstances) 'when he shall have been of counsel in the case.' What is meant by the phrase 'sit in any case' is, we are of opinion, explained by the provisions of the Constitution as to what may be done when a judge is so disqualified. For instance, the parties may by consent appoint a proper person to try the case; or, upon their failing to do so, a competent person may be appointed to try the same in the county where it is pending. Taking these several passages in connection, it would seem that when it is said the judge shall not sit in any case, it is intended he shall not do what the person chosen or appointed may do, that is, 'try the case.' So that, whilst a judge who had been of counsel for either party could not sit in the trial of the case, or make any ruling which would properly arise on the trial, he would not be incompetent to preside in taking incidental orders; as, for instance, an order granting a change of venue, or entering an order appointing the person agreed upon to try the case. The disqualification of the judge to try the case would not prevent him from receiving the report of the grand jury for the term, although there be embraced in the report the return of an indictment in which he would not be qualified to sit in the trial." (See, also, *Heydenfeldt* v. *Towns*, 27 Ala. 423; *In re Ryers*, 72 N. Y. 15; 28 Am. Rep. 88; *Thornton* v. *Wilson*, 55 Ga. 607; *State* v. *Collins*, 5 Wis. 339; *Underhill* v. *Dennis*, 9 Paige, 202.)

We are of opinion that the function of the regular judge in ordering an open *venire* to issue to the sheriff is one of those formal matters in which he is not disqualified to act, because the case to come before the jury to be summoned on such open *venire* is one in which such judge had been counsel. It is as formal a matter as receiving an indictment, or granting a change of venue, or entering an order appointing the person agreed upon to try the case (*Cook* v. *State, supra*), or executing a special mandate of the Supreme Court to the court in which the alleged disqualified person is judge (*State* v. *Collins, supra*), or appointing commissioners to audit claims against an estate

in which the judge is interested (*Heydenfeldt* v. *Towns, supra*), or issuing a warrant of distress. (*Thornton* v. *Wilson, supra.*)

We are satisfied that defendant's challenge to the panel was properly overruled, upon the ground upon which he made it. He now urges, in his brief, in this court, for the first time, that the jury was incompetent to try the case, because a jury commission had not been appointed in the county of Cascade. (*State ex rel. Root* v. *McHatton, Judge,* 10 Mont. 370.) But that objection to the jury was never made in the District Court, nor was exception ever taken or saved.

3. It is specified as error that the court allowed plaintiff's attorney to make certain remarks to the jury upon opening the case alleged to be improper; but no bill of exceptions was made or certified, and the matter is not before this court.

4. It is objected that the court allowed the plaintiff Littrell to testify as to the condition of the well in respect to having water in it, three years after it was dug; but the court allowed that testimony, with the ruling that, if it were not connected with the condition of the well at the time the plaintiffs ceased work upon it, the evidence would be stricken out. It was afterwards, and before the case was submitted to the jury, stricken out.

5. Objections are made to the refusal of the court to give certain instructions requested by the defendant. But the instructions alleged to be refused are not made part of the record, and we do not know that they were requested or refused.

6. It is contended that the court erred in giving the following instruction : " Whether water was to be reached is not expressed in the contract or arrangement that was had between plaintiffs and defendant, and you are to take that into consideration in passing upon it, and with the other part of the evidence in this case." Appellant does not inform us what the objection was to the instruction. It appears that the court stated a portion ot the evidence with absolute fidelity, and a portion upon which there was no conflict. There was not a word in the evidence that water was to be reached. The court told the jury that they were to consider that fact along with the rest of the evidence. It was certainly pertinent to the issue made by the pleadings, and no reason is suggested why it is objectionable.

7. We come now, after clearing the way, to the gist of the action. The plaintiffs seek to recover for services, upon a *quantum meruit.* They proved the services and the value, and the jury found with them. The defendant alleges a special contract to sink a well containing water other than surface water, and that plaintiffs left the contract without reaching water. There is a conflict of evidence as to why plaintiffs quit the work. Plaintiff Littrell testifies that, after he had reached two hundred and thirty feet, defendant Wilcox told him not to prosecute the work further. The jury settled this conflict by their verdict, and the District Court refused to disturb their finding.

Now, as to the special contract to reach water. It cannot be seriously contended that it appears from the evidence that the plaintiffs ever agreed, in terms, to sink to water. But defendant founds his argument upon his construction of the word " well"; that plaintiffs agreed to drill a " well "; that a " well " is a hole in the ground, containing water other than surface water; that when plaintiffs agreed to drill a " well" they contracted to furnish an article meeting that definition, and that, if they did not produce a hole in the ground containing water other than surface water, they did not drill a " well," and cannot recover.

Let it be observed here that nothing was said about price when the work was commenced and the contract made. The defendant himself selected the site for the proposed well. Nothing was said about plaintiffs undertaking to reach water. All that can be gleaned from the conversations of the parties is that plaintiffs were to dig a well. From this contract, and the circumstances, to construe an undertaking on the part of the plaintiffs to reach water or receive no pay, seems to us to do great violence to language, and to the ordinary transactions of sane men.

It appears that the services of plaintiffs were worth what they charged. When plaintiffs went to dig a well, when they took a site selected by defendants, when no guaranty of reaching water was made, when no price was fixed for performing the services or reaching water, can a court for a moment regard it as within the contemplation of the parties, as shown from their words or their acts, that they used the word " well " as

meaning a hole in the ground, containing water other than surface water? We think not.

Bouvier's Law Dictionary defines a "well" as "a hole dug in the ground in order to obtain water." This is, to our mind, the only practical view. The object of a well is to obtain water. The well may be unsuccessful. The object of a mining shaft is to develop a mine that will pay — an object not always attained.

Under the circumstances of the case, we cannot construe the word "well" as defendant insists; and he must depend wholly upon the construction of that word, for he utterly failed to prove any special contract in terms, and the jury so found.

We are of opinion that the judgment and the order denying the motion for a new trial should be affirmed, and it is so ordered.

*Affirmed.*

BLAKE, C. J., and HARWOOD, J., concur.