(101 App. Div. 69)

McAFEE v. DIX.

(Supreme Court, Appellate Division, Second Department. January 6, 1905.)

1. APPEAL—INSTRUCTION.
    Where the charge as a whole conveys the correct rule of law on a given question, the judgment will not be reversed, although detached sentences may be erroneous.

2. SAME.
    Error in an instruction favorable to the appellant is not available to him on appeal.

3. SALE—ACTION FOR CONTRACT PRICE—JURY QUESTION.

In an action recover the price of iron sold, defendant alleged that it was rejected, as originally shipped, and a new price was agreed on for the part taken by defendant. *Held*, whether the plaintiff was entitled to recover the original price was a question for the jury.

4. SAME—INTEREST—OMISSION BY JURY—POWER OF COURT.

In an action for the price of an article sold under special contract, an award of the contract price carries with it interest thereon from the time the price was due; and, on the omission of the jury to include it in their verdict, as instructed, the court could add it in entering judgment.

Appeal from Trial Term, Kings County.

Action by Frederick L. McAfee against Charles B. Dix, doing business under the name and style of McKay & Dix. From a judgment and order on a verdict for plaintiff, and an order denying a motion to set aside or reduce the judgment, defendant appeals. Affirmed.

Argued before HIRSCHBERG, P. J., and WOODWARD, JENKS, and HOOKER, JJ.

Robert Benedict, for appellant.

Herbert Noble, for respondent.

JENKS, J. On January 11, 1900, Fisher and the defendant. made an agreement in writing whereby Fisher was to sell and deliver to the defendant iron of certain qualities at certain prices, as required by specifications of the defendant. This action is to recover a price named in the contract for one shipment of 35,537 pounds delivered to the defendant on or about April 12, 1900, and used by him, less 3,097 pounds returned in July, 1900. The defendant answers that this iron was rejected by him as not up to the standard of the contract; that Fisher acquiesced in such rejection. and promised to replace the shipment, but did not, and also that it was subsequently agreed between them that the defendant should use such part of the shipment as he wished, and return the remainder, and that the defendant should pay only the reasonable worth of the iron used; that also defendant thereafter used 29,458 pounds, and returned 3,079 pounds; and that the reasonable value of the part used was $476.59, which the defendant had offered and was willing to pay. The jury returned a verdict for the contract price, and the defendant appeals.

The appellant relies upon only two errors; disavowing any attack upon the rulings admitting or rejecting testimony, or upon the charge as to the burden of proof, or upon the respondent's contention as to the effect of defendant's omission to renew the motion for dismissal at the close of the case. I shall consider the two alleged errors:

1. It is contended that there was error in this instruction to the jury:

"The question for you to decide between these two sets of witnesses is, was this iron what the contract called for? If it was, then the defendant must pay what the price stated in this contract is."

The learned and able counsel for the appellant says that this instruction was properly excepted to, but he fails to refer to any spe-

cific exception, and I cannot find one. On the contrary, I read in the colloquial part of the charge that the counsel said:

"Then your honor did say this, in which I think you left out something. You said, if the iron was ordered, and if the defendant received it and kept it, he was bound to pay the price agreed upon. The Court: If it were equal to the contract. Mr. Benedict: Your honor left that out when you first said it. The Court: I think I said it again and again—'if the iron was the same.' The jury understood me as meaning that—if the goods were as called for in the contract."

There was neither exception nor objection taken to this statement. Nevertheless I will consider the instruction. The court had first discussed the testimony as to the quality of the iron delivered, in comparison with that ordered. The instruction is susceptible of the construction that, if the jury decided that the iron was of a quality called for by the contract, the defendant must pay the price named in the contract for such iron. But this did not necessarily follow. For the defendant maintained that he had rejected the iron under the contract, that Fisher had accepted that rejection, and that thereupon they made a separate agreement, or at least a modification of the contract, to the effect that the defendant should use so much of the iron as he wished, and should pay but the reasonable price for it. Assume that the jury should find that the defendant's version was true. He was not bound in such event to pay the price named in the contract for iron of this quality, but only the reasonable price therefor. The price named in the contract for such iron may have been far different from the reasonable price. If the two prices were identical, then the instruction could not be criticised, but it would escape simply through the coincidence. The rule is, however, that if the charge, as a whole, conveyed to the jury the correct rule of law on a given question, the judgment will not be reversed, although detached sentences may be erroneous. Caldwell v. New Jersey Steamboat Co., 47 N. Y. 282; People v. McCallam, 103 N. Y. 587, 9 N. E. 502; Hickenbottom v. D., L. & W. R. Co., 122 N. Y. 91, 25 N. E. 279. Despite this expression, did the charge, as a whole, convey to the jury the rule that the defendant was only bound to pay the contract price if he accepted the iron under that contract? The court proceeded to state clearly and accurately the two contentions, and then charged as follows:

"He [i. e., the plaintiff] says that the evidence, both oral and documentary, all tends to show that this original contract was never qualified. If it was not qualified or altered, then the defendant must pay the contract price. If the goods did not come up to the requirements of the contract, and were delivered to the defendant, the defendant was justified in refusing to receive them, and could have stopped there and not paid anything. The fact that he used the goods after saying they were not up to the contract, and used them with the acquiescence of the plaintiff, agreeing that a new price should be established, does not bind the defendant to pay the contract price."

And again, after the court had stated the two theories, and that the version of the plaintiff was that the evidence, both oral and documentary, all tends to show that the original contract was never

qualified, and that, if not, then the defendant must pay the contract price, the court finally charged:

"There is but one question in the case. * * * If the plaintiff is entitled to recover on his theory, he is entitled to $810.53, with interest, which will be agreed upon. If he is not entitled to recover the contract price, he is entitled to recover for 32,500 pounds of iron, less 3,098 pounds which were returned, at whatever the market price of the iron was in the locality where it was used, and at the time of its use."

I think, in view of the entire charge, and in the absence of any specific exception or request, the error of the earlier instruction is not capital. I may add that there was a possibility of prejudice to the plaintiff in the instruction. Assume that the jury had accepted the latter's version that the iron was delivered through an order under the contract, and finally was accepted by the defendant as delivered under that order; yet the jury might have thought that the plaintiff could not recover the contract price for this iron, although it was ordered to be of a certain quality, and shipped to meet that order, and accepted thereunder, unless, in point of fact, the plaintiff now established that the iron was of that quality. This is not the law. Brown v. Foster, 108 N. Y. 387, 15 N. E. 608.

But the point of the appellant's contention is different. He insists that the court by this instruction permitted the jury to award the price of the contract for iron of a quality inferior to that required by the specifications of the contract. If, however, the jury found that the plaintiff delivered this iron ordered under the contract, and the defendant finally accepted it under the contract, the plaintiff was entitled to the contract price for iron of the kind which the defendant ordered, and which the plaintiff shipped to fill that order, irrespective of its actual inferiority. Brown v. Foster, supra. But the appellant's contention is based upon the proposition that his contention that this iron was rejected under the contract, that such rejection was accepted by Fisher, that a second list was sent to Fisher to replace the iron thus condemned, and (if I do not mistake, notwithstanding an allegation in the answer) that it was replaced, is undisputed. He insists that thereupon the order under the contract was fulfilled, without regard to this shipment, and that thereafter the court could not permit the jury to assess the value of this inferior iron at the contract price. The proposition of the defendant necessarily is that, in view of the alleged "undisputed" proof, the court was not justified in submitting the question of a recovery of the contract price to the jury. Though perhaps I might rest by pointing out that the defendant, after all the evidence was in, did not renew his motion to dismiss (Hopkins v. Clark, 158 N. Y. 299, 53 N. E. 27), I will consider the question. I cannot in the compass of this opinion state all of the evidence, but must confine the discussion to the parts relied upon by the appellant, as shown by his points, and to the parts adduced by the defendant which are more directly germane thereto. The defendant wrote to Fisher that this shipment was "trash," unfit for use, and requested a replacement. Thereafter he and Fisher discussed the question over the telephone on or about May 25th. And on May 25th a letter was written under the defendant's name which read:

"Enclosed find list of rigging iron which we require of best double rfd. If you cannot get this iron to us within one week, let us know at once, and we will order from elsewhere. This is to replace the iron you have already sent us, which has been condemned."

Fisher wrote a letter acknowledging this letter, in which he stated, "I will have the iron shipped as you suggest," and then wrote of other business. There is evidence that Fisher continually asserted his desire to satisfy the defendant. It was beyond dispute that, when the defendant renewed his complaint over the telephone, Fisher asked him to try to use what he could, and offered to retake the remainder.

On the other hand, there is evidence that Fisher, while asserting his desire to fulfill his contract to the satisfaction of the defendant, maintained that the iron would be "all right," that some defects were natural in a large shipment, and that both defendant's superintendent and blacksmith had told him that the rolled iron—two-thirds of the shipment—was of proper quality, and some of the rest likewise. Although Fisher admits that in the conversation over the telephone the defendant complained, and that he finally requested the defendant to try to use the iron and to return the remainder, he denies that either then or at any time was the question of the price thereof even discussed. Fisher testifies also that some time thereafter the defendant told him that he had used all of the iron, save about 4,000 pounds, which he wished him to take back, and that he agreed to do so. It appears that the letter of May 25th was written by the defendant's superintendent, Eaton, who gave as his reason for the statement regarding replacement therein, "Because we required the iron to go on with the work," and who also testified that he did not remember whether the defendant told him of the telephonic conversation, or whether he said anything about the iron, save in a general way. A large quantity of iron appears to have been furnished in answer to this order of May 25th. But the defendant stated on cross-examination that, if he had mentioned the kind of iron, they would have specified the same sizes, and, if they specified sizes different from the original order, the order of May 25th was not for replacement. Thereafter Fisher testified that the order was entirely different, and referred to the copy of the invoice which he had sent to the defendant, and which was read in evidence. The defendant also stated on cross-examination that he only received "a driblet"—not more than 2,000 pounds—to replace the iron objected to, and that he would not term 31,000 pounds a "driblet." Fisher thereupon testified that the order was 31,000 pounds, and that the said invoice in evidence related to that order. Eaton testifies that they were receiving iron from Fisher all through the summer. I think that the jury could have concluded that, although the defendant did object to the iron, and did announce his rejection to Fisher, with a request that he replace it, and that Fisher sought to satisfy the defendant, even to the extent of yielding in full to his demand, yet that Fisher finally persuaded the defendant to use the iron, offering to take back what was not used; that Fisher did not agree to modify the price; and that the retention and use of the iron by the defendant was a final, practical acceptance thereof. But I am not called upon on this appeal to pass upon the correctness of the conclusion of the jury, or to test it with the criterion of my

own verdict if I had sat upon the jury, but whether the court was warranted in submitting the question of the right of the plaintiff to recover the contract price. I cannot say that the court was not.

2. Without notice to the defendant, the plaintiff entered judgment for $810.53, with costs, and $171.40 interest. Eight hundred and ten dollars and fifty-three cents was the contract price. Thereafter the defendant, asserting the absence of notice, and his understanding that the entry of judgment was stayed, moved to set aside the judgment, or to reduce it by a deduction of the interest, on the ground that the verdict did not afford it. At the hearing the counsel read his affidavit that one of the jurymen had told him that the verdict was a compromise, and that the interest was intentionally excluded. The plaintiff relied upon the charge of the court. The clerk's minutes of October 21, 1903, show:

"The jury come into court, and say that they find a verdict for the plaintiff for $810.53."

The court denied the motion, and the minutes now contain this addition:

"Mem. Oct. 29, 1903. The interest should be added to the findings of the jury, because the court, in its charge to the jury, said that the interest would be agreed upon. As no objection was made to this at the time, it must be taken as accepted by counsel for each party."

The charge of the court, which is referred to in the amendment to the minutes, is as follows:

"If the plaintiff is entitled to recover on his theory, he is entitled to $810.53, with interest, which will be agreed upon."

I would not interpret the statement "which will be agreed upon" to mean that the parties would agree that interest must follow the verdict, but only that the amount of the interest would be agreed upon—that there would be no dispute over the computation. True, it might be argued therefrom that when the court stated that interest would be agreed upon, and defendant stood mute, this was some indication of acquiescence that interest might be awarded with the contract price. Certainly the memorandum of the court's decision of the motion, "I am of the opinion that interest should be included in the judgment," does not indicate that the decision was based upon that statement, and the failure of objection or protest thereto. It also appears, when the learned counsel for the plaintiff asked for an instruction as to the verdict, he said that under certain circumstances the jury "should find" a verdict for the plaintiff for $810.53, with interest, to which the court replied, "Of course."

But interest was incident to the award of the contract price. Dana v. Fiedler, 12 N. Y. 40, 62 Am. Dec. 130; De Lavallette v. Wendt, 75 N. Y. 579, 31 Am. Rep. 494; Peetsch v. Quinn, 7 Misc. Rep. 6, 27 N. Y. Supp. 323, and authorities cited. In Martin v. Silliman, 53 N. Y. 615, the court held that, if the plaintiff was entitled to a sum liquidated and certain, he had the right to the interest thereon, and the fact that the jury arbitrarily reduced his claim to the amount of the verdict did not, either in law or in equity, affect his right to interest upon the amount actually recov-

ered. The practice in the case at bar was upheld in Lowenstein v. Lombard, Ayres & Co., 2 App. Div. 610, 38 N. Y. Supp. 33; the court saying that:

"The sole question for us to determine, therefore, is whether or not the court on the trial distinctly held, as a matter of law, that the plaintiff was entitled to recover the amount of the damage and interest if the jury found in favor of the plaintiff upon the facts."

It is true that the court say that they must assume that the jury returned the incorrect amount by mistake, but I do not see that such statement affects the principle, so that the power of the court is limited to action only when it is assumed or it appears that the jury made a mistake, provided the principle is that the plaintiff was entitled, in law and in equity, to the interest, as a necessary incident of such recovery. Interest was demanded in the complaint. The court rightly declared (and, indeed, there was no exception) that interest was the plaintiff's due in event of such a verdict. The jury gave that verdict, and yet for some reason ignored the law as to a matter where it had neither discretion nor—the rate and period being certain—latitude for calculation. It seems absurd that the court is powerless to correct the judgment so as to award that sum which legally belongs to him who has gained the verdict, but that it must recognize this erroneous omission or commission of the jury by depriving the successful suitor either of the benefit of the trial, or by mulcting him of a part of his rightful judgment.

The judgment and orders should be affirmed, with costs. All concur.