■ In the Matter of the COMMISSIONER OF WELFARE OF THE CITY OF NEW YORK, Respondent, v. WILLIE SIMON, Appellant.

*Per Curiam.* Although respondent-appellant admitted having repeated acts of sexual intercourse with petitioner for a four-year period preceding the birth of the child and continuing after the child was born, his defense in this filiation proceeding is predicated on a contention that he was sterile at the time of conception and therefore incapable of fathering the child. In substantiation of that defense, appellant offered the testimony of a physician who claimed to be a specialist in venereal diseases. After expressing skepticism as to that physician's qualifications to testify in the field of fertility of males, the Trial Judge found that the appellant was the father of the child.

The testimony of the physician was that he had examined appellant, for the first time, in September, 1963, just about two weeks before the trial. The child was born on August 20, 1958. From the examination made in September, 1963 — almost six years after the conception of the child and five years after its birth — the doctor diagnosed appellant's condition as "bilateral orchitis due to a chronic inflammatory disease", which, in the physician's opinion, had been in existence between 20 to 25 years. Appellant was then sent to a laboratory for examination of seminal fluid. The report of the purported examination indicated that there were no sperm cells. Based upon his physical examination of appellant, the report from the laboratory and a history of venereal disease, it was the doctor's opinion that appellant was not capable of having fathered the child born on August 20, 1958.

The weight to be given such opinion evidence is ordinarily for the tribunal charged with a decision on the facts. (*Commercial Cas. Ins. Co.* v. *Roman,* 269 N. Y. 451, 456; *Fichter Steel Corp.* v. *Cox Constr. Co.,* 266 App. Div. 347, 350; *Matter of Sebring,* 238 App. Div. 281, 290.) Considering the rather unimpressive qualifications of the doctor as an expert in fertility, the fact that he first examined appellant almost six years after the child was conceived, and that the laboratory test of what purported to be appellant's seminal fluid was also made six years after conception of the child, and in view of the absence of proof as to the circumstances under which the laboratory specimen was obtained, including the length of time between the acquisition of the specimen and the delivery to the laboratory, we believe that the trier of the facts was warranted in not adopting the opinion of appellant's expert as controlling in the case. Certainly in view of all of the circumstances, the court below was not obligated to give the opinion the conclusive effect that appellant and the dissenting Justices would assign to it. On the entire case, we find that the filiation order is supported by convincing and satisfactory evidence, and should be affirmed.

STEUER, J. (dissenting). In this filiation proceeding the respondent offered medical testimony that he was not fertile and had not been at the time of conception. The testimony was given by a duly licensed physician who was a specialist in venereal diseases. He testified that respondent was suffering from a chronic inflammatory disease of both testicles, resulting from an old venereal infection. It further appeared that a Health Department report showed a slight positive reaction for syphilis. In addition, there was admitted in evidence a laboratory report of respondent's semen showing a complete absence of sperm cells. This report was admitted in evidence upon a stipulation that respondent would submit to a similar examination by a doctor chosen by the Corporation Counsel. No examination was ever sought and no medical testimony of any kind was offered to refute the testimony offered. Instead, the court refused to credit the doctor's testimony on the ground that, while he was an active practitioner in the field of venereal disease, he was not doing research in fertility. Concededly, venereal disease is one of the major factors affecting fertility and its presence in this instance was the

assigned cause for the doctor's opinion. So his expertise was abundantly established, and in no way contraverted. Furthermore, the laboratory report, taken at its face value, was conclusive. No one disputes that semen lacking in sperm cells is nonfertile. All that was offered in opposition was the possibility that the semen had not been analyzed under proper conditions (a possibility negatived by the report), and the court's independent research that the number of cells in an individual's semen varies from time to time and the impregnable quality of the cells may vary with different partners to the act of copulation. Neither of these factors is of any significance in this case. Moreover, if the Corporation Counsel wished to challenge the findings of the report, the method he stipulated for should have been adopted rather than argument on the basis of remote possibilities. On the basis of the entire testimony, no credible case for paternity was made out.

The order of the Family Court should be reversed and the proceedings dismissed.

Valente, J. P., McNally and Witmer, JJ., concur in Per Curiam opinion; Steuer, J., dissents in opinion, in which Stevens, J., concurs.

Order, entered on October 4, 1963, affirmed.